USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/17/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                         :

BUMBLE AND BUMBLE, LLC,          :

        Plaintiff,          :

                          :

  -v.-                       :

PRO'S CHOICE BEAUTY CARE, INC., *et al.*,  :

                          :

                          :

        Defendants.       :
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
14-CV-6911 (VEC) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Valerie E. Caproni, United States District Judge:**

      On June 9, 2015, the Court entered a default judgment in favor of plaintiff

Bumble and bumble, LLC ("Bumble") against defendants Visible Beauty Corp.

("Visible Beauty"), Salon Visible Corp. ("Salon Visible"), and Arturo Vela ("Vela,"

collectively with Visible Beauty and Salon Visible, the "Vela Defendants"), and

referred this matter to me to conduct an inquest into damages. For the reasons

stated below, I recommend that the Court enter judgment for Bumble against the

Vela Defendants in the amount of $500,000 in statutory damages, along with

prejudgment and postjudgment interest as set forth in part II.D, *infra*, and

attorneys' fees and costs in the amount of $38,697.65 and $2,579.63 respectively.

# I.   BACKGROUND

Bumble commenced this action on August 25, 2014 and named the Vela Defendants, along with other corporate entities and individuals, as defendants. Complaint, dated August 25, 2014 ("Compl.") (Dkt. No. 1).  Bumble, which is in the luxury beauty products business, brought claims of trademark counterfeiting, trademark infringement, false designation of origin and false advertising, trademark dilution, common law trademark infringement, common law unfair competition, deceptive acts and practices, and breach of contract in violation of federal and New York State law.  *Id.* ¶ 1.

## A.   Procedural Background

On December 10, 2014, Bumble sought an extension of time to serve the Vela Defendants and permission to effect service through alternative methods – via the California Secretary of State in the case of Salon Visible and Visible Beauty, and by mailing and affixing copies of the summons to Vela's dwelling place.  (Dkt. No. 23). Bumble's request described diligent attempts to serve the Vela Defendants that were nonetheless unsuccessful.  (Dkt. Nos. 24, 25).  The Court granted Bumble's request on January 7, 2015, noting Bumble had demonstrated that service on the Vela Defendants by other prescribed means was impracticable.  (Dkt. No. 37).  Vela was served on January 27, 2015.  (Dkt. No. 54).  Salon Visible and Visible Beauty were served on February 1, 2015.  (Dkt. Nos. 52, 53).

On April 14, 2015, Bumble sought certification of default on the Vela Defendants for failure to plead or otherwise defend the action against them.  (Dkt. No. 57).  The defaults were noted by the Clerk of the Court on April 15, 2015.  (Dkt.

No. 60). On June 9, 2015, the Court entered an Order of Default Judgment, finding

the Vela Defendants liable to Bumble for (a) trademark counterfeiting in violation

of 15 U.S.C. § 1114; (b) trademark infringement in violation of 15 U.S.C. § 1114;

(c) the use of false or misleading designations of origin, in violation of 15 U.S.C. §

1125(a); (d) trademark dilution in violation of 15 U.S.C. § 1125(c); (e) trademark

infringement and unfair competition in violation of the common law of the State of

New York; (f) deceptive acts and practices in violation of New York General

Business Law § 349; and (g) injuring Bumble's public image and business

reputation and/or diluting the distinctive quality of the Bumble trademarks in

violation of New York General Business Law § 360-1. (Dkt. No. 70). The Court

then referred this case for an inquest into damages. (Dkt. No. 69).

Bumble thereafter filed proposed findings of fact and conclusions of law, as

well as a declaration in support of its application. Plaintiff's Proposed Findings of

Fact and Memorandum of Law for Damages Inquest, dated July 10, 2015 ("Pl.'s

Mem.") (Dkt. No 79); Declaration of Ira S. Sacks, dated July 10, 2015 ("Sacks Decl.")

(Dkt. No 80). The Vela Defendants have not responded to Bumble's submissions.

(Dkt. No. 84). The other defendants in this action – Pro's Choice Beauty Care, Inc.

("Pro's Choice"), CVS Pharmacy Inc. ("CVS"), Active Beauty, Inc., and Doris Arash-

Eben (together, the "Non-Defaulting Defendants") – entered into a stipulation with

Bumble on September 2, 2015. (Dkt. No. 105). This stipulation specified that any

default judgment against the Vela Defendants, and any injunctions and/or any

findings of fact or conclusions of law contained therein, would have no collateral

estoppel or other preclusive effect against the Non-Defaulting Defendants, that Bumble could not use any portion of the default judgment in this action against the Non-Defaulting Defendants, and that the Non-Defaulting Defendants may contest liability and damages as if the default judgment had never been entered. *Id.*

Bumble seeks statutory trademark damages in the amount of $2,000,000 pursuant to 15 U.S.C. § 1117(c)(2), attorneys' fees in the amount of $49,639.90 pursuant to 15 U.S.C. § 1117 and New York General Business Law, and costs in the amount of $2,669.51 pursuant to 15 U.S.C. § 1117, for a total award of $2,052,309.41, together with all applicable prejudgment and postjudgment interest as within the Court's discretion. Pl.'s Mem. at 21.

## B.    Factual Background

As a result of the Vela Defendants' default, the Court accepts as true all of the well-pled factual allegations of the complaint, except those relating to damages. *See, e.g., Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Bumble "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of [its] damages." *Dunn v. Advanced Credit Recovery Inc.*, No. 11-CV-4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012) (citing *Greyhound Exhibitgroup*, 973 F.2d at 158), *adopted by* 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012). Bumble is entitled to all reasonable inferences that can be made from the evidence that is presented. *See, e.g., Au Bon Pain Corp. v. Artect, Inc., et al.*,

4

653 F.2d 61, 65 (2d Cir. 1981). Accordingly, the following facts, which are drawn from the Court's review of Bumble's complaint, its submissions regarding the Vela Defendants' default and this inquest, as well as the Court's decision granting default in this action, are established for the purpose of determining the damages to which Bumble is entitled.

Bumble, directly and by and through its affiliates and agents, is engaged in the distribution and sale of luxury beauty products, including hair care products. Compl. ¶ 15. Since 1992, Bumble products have been widely promoted, offered for sale, and sold throughout the United States under various trademarks. *Id.* ¶ 16. Two of these trademarks are at issue in this lawsuit: "BUMBLE AND BUMBLE" and the stylized "Bb." *Id.* ¶¶ 16-17. Bumble and its predecessors have exclusively owned these federally registered trademarks at all times. *Id.*

In the course of an ongoing investigation that Bumble conducted regarding the purchase, distribution, advertisement, offer for sale, and sale of hair care products by CVS bearing unauthorized reproductions, counterfeits, copies, and/or colorable imitations of the Bumble trademarks, Bumble identified Pro's Choice as one of the suppliers of infringing or counterfeit products to CVS. *Id.* ¶ 28. In June 2012, Bumble inspected Pro's Choice's inventory and identified approximately 12,948 infringing or counterfeit Bumble products. *Id.* ¶ 31.

The Vela Defendants, among others sued by Bumble in the instant case, were suppliers of the identified infringing or counterfeit products to Pro's Choice. *Id.* ¶¶ 33-34. Long after Bumble's adoption of and use of the Bumble trademarks on hair

5

care products, and long after Bumble's federal registration of the Bumble trademarks, the Vela Defendants advertised, distributed, offered for sale, and/or sold in interstate commerce hair care products bearing infringements and counterfeits of the Bumble trademarks without Bumble's consent. *Id.* ¶ 46. Vela was the figure principally responsible for the Vela Defendants' wrongful conduct, including their violations of the Lanham Act. *Id.* ¶¶ 11, 13. Vela knowingly and intentionally authorized, approved, directed, controlled, and participated in this wrongful conduct. *Id.*

In 2009 and 2011, the Vela Defendants sold 10,256 units of infringing or counterfeit Bumble products to Pro's Choice for $145,748.72. Sacks Decl. ¶¶ 10-11, Exs. 5-6; Pl.'s Mem. at 4 (¶¶ 20-21). These products included Leave-In Conditioner (312 units at $11.50 per unit), Thickening Shampoo (91 units at $11.50 per unit), Thickening Conditioner (487 units at $12.08 per unit), Gentle Shampoo (578 units at $11.50 per unit, and 2,376 units at $14.85 per unit), Alojoba Shampoo (518 units at $12.08 per unit, and 1,210 units at $14.85 per unit), Alojoba Conditioner (550 units at $12.65 per unit, and 1,212 units at $15.53 per unit), and Super Rich Conditioner (604 units at $12.08 per unit and 2,318 units at $15.53 per unit). *Id*; *see also* Pl.'s Mem. at 4 (¶ 21).

## II.   DISCUSSION

### A.   Statutory Damages

Bumble seeks statutory damages of $2,000,000 for counterfeiting and infringement of two Bumble trademarks and at least two types of goods at issue

6

pursuant to 15 U.S.C. § 1117(c)(2). Bumble observes that this amount is well below the maximum of $8,000,000 that the Lanham Act authorizes this Court to award. Pl.'s Mem. at 9, 14.

Even after a default judgment is entered against defendants, "allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999); *Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11-CV-5980 (RA)(JLC), 2013 WL 5977440, at *5 (S.D.N.Y. Nov. 12, 2013), *adopted by* 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014) ("*Laboratorios*"). Instead, a plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of [its] damages." *Dunn,* 2012 WL 676350, at *2 (citing *Greyhound Exhibitgroup,* 973 F.2d at 158). To establish damages upon default, a plaintiff must demonstrate that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup,* 973 F.2d at 159; *Laboratorios,* 2013 WL 5977440, at *5; *Curves Int'l Inc. v. Negron,* No. 11-CV-2986 (ADS) (GRB), 2012 WL 4490542, at *3 (E.D.N.Y. Aug. 31, 2012), *adopted by* 2012 WL 4490553 (E.D.N.Y. Sept. 28, 2012).

"In determining damages not susceptible to simple mathematical calculation, Federal Rule of Civil Procedure 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence." *Laboratorios,* 2013 WL 5977440, at *5 (citations omitted). "Even in the absence of a hearing, however, the district court

7

cannot simply rely on the Plaintiff's statement of damages; there must be a basis upon which the court may establish damages with reasonable certainty." *House v. Kent Worldwide Mach. Works, Inc.,* 359 F. App'x 206, 207 (2d Cir. 2010) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)). "[Courts] have interpreted this to mean that, even when the defendant defaults and is not present to object, damages must be based on admissible evidence." *Id.* (citations omitted). Here, a hearing is not necessary, as documents submitted in this action provide a "sufficient basis from which to evaluate the fairness" of the damages requested. *Fustok v. ContiCommodity Servs. Inc.,* 873 F.2d 38, 40 (2d Cir. 1989).

### 1. Applicable Standards Under 15 U.S.C. § 1117(c)

Under the Lanham Act, trademark owners may elect statutory damages instead of actual damages. 15 U.S.C. § 1117(c). A court may award statutory damages between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" or, if the court finds the use of the mark to have been willful, up to $2,000,000 per counterfeit mark per type of good. *Id.*; *see generally All–Star Marketing Grp., LLC v. Media Brands Co., Ltd.,* 775 F. Supp. 2d 613, 620-21 (S.D.N.Y. 2011) ("The rationale for § 1117(c) is the practical inability to determine profits or sales made by counterfeiters.") (citations omitted). The Lanham Act provides no further guidelines for assessing appropriate statutory damages; the sole limit is what "the

8

court considers just." *Gucci Am. Inc. v. Duty Free Apparel, Ltd.,* 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (quoting 15 U.S.C. § 1117(c)).

"Despite the lack of guidelines, courts have found some guidance in the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement." *Laboratorios,* 2013 WL 5977440, at *8 (citations omitted); *see, e.g., Tiffany (NJ) Inc. v. Luban,* 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); *Sara Lee Corp. v. Bags of N.Y., Inc.,* 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). Under the statutory-damages framework articulated by the Second Circuit in *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co.,* 807 F.2d 1110, 1117 (2d Cir.1986) *("Fitzgerald"* ), courts consider: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the Plaintiff;" (3) "the value of the copyright" or, by analogy, trademark; (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." *Duty Free Apparel,* 315 F. Supp. 2d at 520 (citing *Fitzgerald,* 807 F.2d at 1117); *see, e.g., All–Star Marketing,* 775 F. Supp. 2d at 622-23 (applying test for statutory damages in trademark action subsequent to defendants' default); *Coach Inc. v. Melendez,* No. 10-CV-6178 (BSJ) (HBP), 2011 WL 4542971, at *6 (S.D.N.Y. Sept. 2, 2011) (same), *adopted by* 2011 WL 452717 (S.D.N.Y. Sept. 20, 2011); *Luban,* 282 F. Supp. 2d at 125 (same).

Of note, statutory damages are designed not only to compensate injuries

sustained but also to discourage wrongful conduct by the defendant and others. *See*

*Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 113–14 (2d Cir. 2001); *Tiffany (NJ)*

*LLC v. Dong,* No. 11-CV-2183 (GBD) (FM), 2013 WL 4046380, at \*5 (S.D.N.Y. Aug.

9, 2013).  Where a defendant has acted willfully, statutory damages "should

incorporate not only a compensatory, but also a punitive component to discourage

further wrongdoing by the defendants and others." *Malletier v. Carducci Leather*

*Fashions, Inc.,* 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009); *Gucci Am., Inc. v.*

*MyReplicaHandbag.com,* No. 07-CV-2438 (JGK), 2008 WL 512789, at \*3 (S.D.N.Y.

Feb. 26, 2008) (quoting *Rolex Watch U.S.A., Inc. v. Jones,* No. 99-CV-2359

(DLC)(FM), 2002 WL 596354, at \*5 (S.D.N.Y. Apr. 17, 2002)); *Polo Ralph Lauren,*

*L.P. v. 3M Trading Co.,* No. 97-CV-4824 (JSM) (MH), 1999 WL 33740332, at \*5

(S.D.N.Y. Apr. 19, 1999) ("an award of statutory damages is designed to serve both

compensatory and punitive purposes.").

### 2.   Calculating Bumble's Damages

Here, the *Fitzgerald* factors counsel in favor of awarding significant damages

to Bumble.  First, the Vela Defendants' willful infringement has been established by

virtue of their default and consequent failure to controvert allegations of willfulness

in the complaint. *See, e.g., Chloe v. Zarafshan,* No. 06-CV-3140 (RJH) (MHD), 2009

WL 2956827, at \*7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a

party's default because an innocent party would presumably have made an effort to

defend itself."); *Carducci Leather Fashions, Inc.,* 648 F. Supp. 2d at 504 ("Here, by

10

virtue of its default, [defendant] has admitted [plaintiff]'s allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiff]'s rights."). In addition to failing to respond to the Court's order to show cause with respect to a default judgment or to Bumble's submissions regarding the inquest into damages, the Vela Defendants have also not cooperated in producing any records from which to assess the value of the infringing material. *See Sara Lee,* 36 F. Supp. 2d at 165 ("Statutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain."). Though the Court therefore is unable to determine the full scope of the profits reaped by the Vela Defendants or the revenues lost by Bumble in connection with the trademark infringement, Bumble asserts, and the Vela Defendants do not contest, that its trademarks have acquired enormous value and identify Bumble exclusively as the source and origin of the luxury goods to which they are applied. Compl. ¶ 19.

Moreover, an award of statutory damages will serve as a specific deterrent to the Vela Defendants for any current or future infringing activities, the extent to which are not clear due to the lack of evidence, and as a general deterrent to others who might consider engaging in infringing conduct in the future. *See, e.g., Kenneth Jay Lane, Inc. v. Heavenly Apparel Inc.,* No. 03-CV-2132 (GBD) (KNF), 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006). The need to deter other counterfeiters is particularly compelling given the apparent extent of counterfeit activity for which Bumble has pursued or is currently pursuing claims, including those against nine additional defendants in this action and 12 additional defendants in a related action

11

in the District of New Jersey. *See* Sacks Dec. ¶ 22, Ex. 14 (First Amended Complaint, *Bumble & Bumble, LLC v. Harmon Stores, Inc., et al.*, No. 13-CV-01462 (D.N.J. Feb. 19, 2014)). Thus, while the first and second *Fitzgerald* factors remain open issues, the remaining factors weigh strongly in favor of an award of statutory damages.

Nevertheless, a finding of eligibility for statutory damages alone does not mandate the award that Bumble seeks. "Statutory damages are a substitute for actual damages, and should replicate as nearly as possible the actual harm done to the successful plaintiff without punishing it for lacking information on the issue due to the absent defendant's default." *Laboratorios*, 2013 WL 5977440, at *9 (quoting *Mamiya Am. Corp. v. HuaYi Bros.,* No. 09-CV-5501 (ENV) (JO), 2011 WL 1322383, at *7 (E.D.N.Y. Mar. 11, 2011), *adopted by* 2011 WL 1253748 (E.D.N.Y. Mar. 31, 2011)) (citations omitted). Where it is not possible to determine the scope of a defendant's illegal profits, "the court may resolve any doubts against [the defendant] in calculating profits, particularly if the uncertainty is due to [the defendant's] . . . failure to produce documentary evidence." *Harris v. Fairweather,* No. 11-CV-2152 (PKC) (AJP), 2012 WL 3956801, at *3 (S.D.N.Y. Sept. 10, 2012) (citations omitted), *adopted by* 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012). Consequently, "[a]lthough statutory damages need not match actual damages, courts generally hold that 'statutory damages should bear some relation to actual damages suffered.'" *Coach, Inc. v. O'Brien*, No. 10 Civ. 6071 (JPO) (JLC), 2012 WL 1255276, at *2 (S.D.N.Y. Apr. 13, 2012) (quoting *Yurman Studio, Inc. v. Castaneda,*

12

No 07-CV-1241 (SAS), 2008 WL 4949775, at *2 (S.D.N.Y. Nov. 19, 2008)); *see also Laboratorios*, 2013 WL 5977440, at *10 (to establish statutory damages, a "movant must prove that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded.") (quoting *Greyhound Exhibitgroup,* 973 F.2d at 159); *Duty Free Apparel,* 315 F. Supp. 2d at 520 ("To the extent possible statutory damages 'should be woven out of the same bolt of cloth as actual damages.'") (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[E][1] at 14-69 (2003)).

In this case, although the full scope of the Vela Defendants' profits is impossible to determine due to their failure to produce any documentation, Bumble has submitted evidence establishing that the Vela Defendants sold 10,256 units of Bumble products to Pro's Choice for $145,748.72 from 2009 to 2011. Sacks Decl. Exs. 5, 6. Bumble asserts that these figures indicate that the Vela Defendants are not running a small operation, particularly given that this amount does not represent the full volume of other counterfeit products that the Vela Defendants may have sold to other customers. Pl's Mem. at 13.

Bumble is entitled to inferences that can be reasonably drawn from the evidence submitted to the Court. *See Au Bon Pain*, 653 F.2d at 65. Although Bumble's assertion that all products sold by the Vela Defendants were in fact counterfeit could be undercut by additional evidence, the Vela Defendants did not contravene Bumble's broad allegations that they were willful infringers or submit any documents to discredit allegations about the 10,256 units of counterfeit product

sold. Any questions about these assertions therefore should be resolved against the Vela Defendants. *See, e.g., Carducci Leather Fashions,* 648 F. Supp. 2d at 504 ("by virtue of its default, [defendant] has admitted [plaintiff]'s allegation . . ."). However, Bumble's submissions only support its claim that the Vela Defendants recouped the $145,748.72 in sales of counterfeit products to Pro's Choice; Bumble has not submitted any evidence to demonstrate that the Vela Defendants made any additional sales to Pro's Choice or to any other buyer.

In approximating actual damages in other trademark infringement cases involving sales of counterfeit luxury goods, courts have assumed a 300% markup and consequently reduced awards by one-third. *See, e.g., Melendez,* 2011 WL 4542971, at *7 (trademark action involving Coach handbags); *Malletier v. Apex Creative Int'l Corp.,* 687 F. Supp. 2d 347, 358 (S.D.N.Y. 2010) (trademark action involving Louis Vuitton handbags). Bumble has asserted that the Bumble hair products are "luxury beauty products," only sold in "select prestigious retail locations and high end salons." Pl.'s Mem. at 1. As applied to the Vela Defendants' sales to Pro's Choice, this luxury goods markup would approximate the Vela Defendants' profits at $97,651. This $97,651 figure is a reasonable starting point in calculating damages. *Sara Lee,* 36 F. Supp. 2d at 167 (noting that, in calculating statutory damages, "actual damages, such as profits and losses, are a typical starting point for analysis").

Given this baseline, an enhanced award of $125,000 per counterfeit mark per type of good is appropriate, as this takes into account the unknown scope of the Vela

14

Defendants' sales and addresses the compensatory, punitive, and deterrent
purposes of 15 U.S.C. § 1117(c) in the case of willful infringement. *See Carducci
Leather Fashions,* 648 F. Supp. 2d at 504 (noting that where defendant acted
willfully, "a statutory award should incorporate not only a compensatory, but also a
punitive component to discourage further wrongdoing" and finding an award of
$100,000 per mark for a total of $400,000 appropriate in such a case);
*MyReplicaHandbag.com,* 2008 WL 512789, at *3 (noting compensatory and punitive
purpose of statutory damages where defendant acts willfully and awarding
$100,000 per mark); *Rolex Watch U.S.A.,* 2002 WL 596354, at *5 (same).

     While this award is significantly less than the $2,000,000 in statutory
damages that it has requested, Bumble has provided no explanation or basis for the
calculation underlying its request other than the willfulness of the Vela Defendants.
Pl.'s Mem. at 13-14. In comparison, where courts do grant maximum statutory
damages, they typically do so in light of exceptionally large infringing operations.
*See Carducci Leather Fashions,* 648 F. Supp. 2d at 505 (noting cases where courts
awarded the maximum but explaining that, "[i]n each of those cases, there was
reason to believe that the defendant's sales were substantial. . . [such as] the
production of millions of infringing goods" and distinguishing the case before it
because "it is impossible to estimate the scope of [defendant's] counterfeiting
operation"). Though Bumble speculates that the Vela Defendants "*could* be the
ultimate source" of infringing Bumble products, Pl.'s Mem. at 13 (emphasis added),
Bumble has presented no evidence to support such an inference. Absent more

15

detailed information, an award of $125,000 per mark is appropriate and commensurate with damages granted in other cases of willful infringement. *See O'Brien*, 2012 WL 1255276, at *4 (citing *All–Star Marketing Group,* 775 F. Supp. 2d at 624-25 (collecting cases where courts award statutory damages between $25,000 and $250,000 per willfully infringed mark)).

This $125,000 figure should be applied to each of the two marks that the Vela Defendants used on each of the types of goods at issue. 15 U.S.C. § 1117(c) (authorizing statutory damages "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just"). Bumble states that there are two different trademarks at issue and "*at least two* types of goods at issue." Pl.'s Mem. at 14. Bumble apparently suggests that there may be more than two types of goods on the grounds that the Vela Defendants sold seven counterfeit Bumble products, various types of shampoo and conditioner (Thickening Shampoo, Thickening Conditioner, Alojoba Shampoo, Alojoba Conditioner, Gentle Shampoo, Leave-In Conditioner, and Super Rich Conditioner). Sacks Decl., Ex 6.

Courts in this District "have expressed a reluctance to allow the number of types of goods to multiply because of the existence of sub-types." *Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc.*, 704 F. Supp. 2d 288, 292 (S.D.N.Y. 2010) (finding that cookies, crackers, and wafers constituted different types of good but declining to categorize different flavors of products as distinct types); *see also MyReplicaHandbag.com,* 2008 WL 512789 at *4 (stating that, "[f]or the purpose of awarding damages [under § 1117(c)], it seems unduly artificial to

16

categorize the merchandise into separate 'types' for each subtle difference in a particular product's size, shape, color, pattern or fabric . . . separate 'types' should be based on the functional purpose of the product," and finding infringement of six types of general goods: handbags, wallets, handbag and wallet sets, eyeglasses, belts, and watches). While other courts have recognized sub-types of a good as independent sources of trademark liability, this distinction has been made when involving different "lines" of a given product and "not simply different colors, sizes, shapes, or other smaller variations within those lines." *Union of Orthodox Jewish Congregations of Am.*, 704 F. Supp. 2d at 292 (distinguishing *Chanel, Inc. v. Louis*, No. 06-CV-5924 (ARR) (JO), 2009 WL 4639674, at *14 (E.D.N.Y. Dec. 7, 2009), in which the court found different lines of handbags and perfume to be separate types of goods).

Given the general reluctance to inflate damages by recognizing slightly different versions of a product as multiple "types" of goods and because Bumble did not argue that an award should be applied to the seven infringed Bumble products as separate "types" of goods, the Court need not decide whether Bumble products are more analogous to a sub-type of a good or to different "lines" of a product and thus a separate good. Instead, the $125,000 figure should be applied, per each infringed mark, to two types of goods: shampoo and conditioner. Accordingly, I recommend that the Court award Bumble $500,000 ($125,000 x two trademarks x two types of goods) in statutory damages for trademark infringement pursuant to 15 U.S.C. § 1117(c).

17

## B.  Attorneys' Fees

Bumble seeks reimbursement for attorneys' fees in the amount of $49,639.90.
Bumble asserts its eligibility for attorneys' fees pursuant to both 15 U.S.C. § 1117
and New York General Business Law §§ 349(h) and 360-m.  Pl.'s Mem. at 15-16.  As
Bumble has demonstrated that it is entitled to attorneys' fees under 15 U.S.C.
§ 1117(c) and would not otherwise be entitled to double recovery, the Court limits
its discussion to federal law.

A "plaintiff electing statutory damages pursuant to 15 U.S.C. § 1117(c) may
recover attorney's fees pursuant to 15 U.S.C. § 1117(a). . ." *Louis Vuitton Malletier
S.A. v. LY USA, Inc.*, 676 F.3d 83, 87 (2d Cir. 2012).  Section 1117(a) provides that
such an award is appropriate in "exceptional cases," which the Second Circuit has
determined include instances of deliberate and willful infringement.  *Id.* at 111
("[T]he key [to an award of attorneys' fees] is willfulness on the part of the
defendants."); *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 854 (2d Cir.
1995) ("The finding of willfulness determines the right to attorneys' fees.").
Accordingly, because the Vela Defendants' infringement must be deemed willful by
virtue of their default, Bumble is entitled to attorneys' fees.  *See, e.g., Laboratorios*,
2013 WL 5977440, at *13; *U.S.A. Famous Original Ray's Licensing Corp. v. Famous
Ray's Pizza Buffet, Inc.,* No. 12-CV-8753 (JGK) (GWG), 2013 WL 5363777, at *6
(S.D.N.Y. Sept. 26, 2013), *adopted by* 2013 WL 5664058 (S.D.N.Y. Oct 17, 2013).

In order to determine the appropriate fee award, courts typically begin by
determining "the lodestar—the product of a reasonable hourly rate and the

18

reasonable number of hours required by the case." *Millea v. Metro–North R.R.,* 658

F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood*

*Ass'n v. Cty. Of Albany & Albany Cty. Bd. of Elections,* 522 F.3d 182, 183 (2d Cir.

2008)); see also *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 553 (2010). "[T]he

lodestar is not always conclusive," but "its presumptive reasonability means that"

district courts should always "calculate it as a starting point" to determine

attorneys' fees. *Millea,* 658 F.3d at 166. Then, if required, the Court "may adjust

the lodestar figure to reflect consideration of any case-specific circumstances."

*Laboratorios,* 2013 WL 5977440, at *13; *Dunn,* 2012 WL 676350, at *5 n.8.

### 1. Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to

pay," bearing in mind that "a reasonable, paying client wishes to spend the

minimum necessary to litigate the case effectively." *Arbor Hill,* 522 F.3d at 190.  In

assessing reasonableness, the Court may consider the prevailing market rates "for

similar services by lawyers of reasonably comparable skill, experience and

reputation." *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum*

*v. Stenson,* 465 U.S. 886, 896 n.11 (1984)).  "It is well-established that the prevailing

community a district court should consider to determine the lodestar figure is

normally 'the district in which the court sits.'" *Reiter v. MTA New York City Transit*

*Auth.,* 457 F.3d 224, 232 (2d Cir. 2006) (citing *Polk v. N.Y. State Dep't of Corr.*

*Servs.,* 722 F.2d 23, 25 (2d Cir. 1983)).  The applicant for an attorneys' fees award

has the burden of producing satisfactory evidence to demonstrate "that the

requested rates are in line with those prevailing in the community. . . ." *Blum*, 465
U.S. at 896 n.11. The Court may also rely on its own familiarity with prevailing
rates in its district to determine a reasonable rate. *See, e.g., Townsend v. Benjamin
Enters.*, 679 F.3d 41, 59 (2d Cir. 2012); *Miele v. New York State Teamsters
Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987).

Bumble seeks $49,639.90 in attorneys' and investigatory fees for services
rendered by Akerman LLP ("Akerman"), attorneys for Bumble in this action. This
figure represents 162.6 hours of time for legal services rendered by partners,
associates, paralegals, and other staff working on this matter. The billing rates in
this case were $495/hour for Ira S. Sacks, a partner; $459/hour for Scott M. Kessler,
a partner; $324/hour for Benjamin R. Joelson, an associate; $247.50/hour for
Vanessa I. Garcia, an associate; $290/hour for Howard Kogan, a litigation
coordinator; and $85.50 for Mark Plotkin, a reference librarian. Sacks Decl. ¶¶ 36-
41. These rates are a reduction of Akerman's standard rate of $630/hour for Mr.
Sacks, $545/hour for Mr. Kessler, $380/hour for Mr. Joelson, $275/hour for Ms.
Garcia, and $95/hour for Mr. Plotkin. *Id.* at ¶¶ 36-41.

Mr. Sacks has practiced law for more than 40 years with a focus on
intellectual property law and Lanham Act litigation in particular. *Id.* at ¶¶ 33-35.
Mr. Kessler has more than 10 years of complex commercial litigation experience
and his practice has consistently involved litigation of intellectual property cases.
*Id.* at ¶ 37. Mr. Joelson is a sixth year litigation associate and his practice has
included trademark infringement and counterfeiting actions. *Id.* at ¶ 38. Ms.

Garcia is a first year litigation associate and was admitted to practice law in the state of New Jersey in 2014. *Id.* at ¶ 39. Ms. Garcia has passed the New York State bar examination but has not yet been admitted. *Id.* Mr. Kogan has been a litigation coordinator for five years and was previously a paralegal from 1994-2010. *Id.* at ¶ 41. Mr. Plotkin has been a reference librarian for 24 years. *Id.* at ¶ 42.

The Court finds the billing rates for partners and associates in this action to be appropriate, as they are within the range that courts in this District have approved in other trademark infringement actions. *See, e.g., Union of Orthodox Jewish Congregations of Am. v. Royal Food Distributors LLC*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (approving partner's rate of $735/hour and associate's rate of $445/hour in trademark infringement action); *Nat. Assoc. for the Specialty Food Trade, Inc. v. Construct Data Verlag AG,* No. 04-CV-2983 (DLC) (KNF), 2006 WL 5804603, at *5-7 (S.D.N.Y. Dec. 11, 2006) *adopted by* 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007) ("*National Association*") (approving partner's rate of $540/hour and associates' rates of $440/hour and $325/hour).

However, plaintiff's counsel does not provide any evidence of the standard hourly rates for individuals holding Mr. Kogan's title of "litigation coordinator." The Court understands this position to be comparable to, or a promotion from Mr. Kogan's prior position as, a paralegal. Sacks Decl. ¶ 40. Nonetheless, the Court finds the billing rate for the litigation coordinator to be high, as it is well beyond the range that courts in this District have approved for paralegals in trademark infringement actions. *See National Association*, 2006 WL 580463, at *6

21

(determining $180/hour and $200/hour to be reasonable billing rates for a paralegal and senior paralegal); *Sprint Commc'ns Co. L.P. v. Chong*, No. 13-CV-3846 (RA), 2014 WL 6611484, at *8 (S.D.N.Y. Nov. 21, 2014) (finding hourly rates of $205, $185, $180 for paralegals to be reasonable). Accordingly, the Court finds a rate of $200 rather than $290 to be appropriate.

Plaintiff's counsel have also failed to provide evidence of the standard hourly rates for individuals holding Mr. Plotkin's title of "reference librarian." Nevertheless, the Court finds Mr. Plotkin's hourly rate appropriate given that it is roughly equivalent or less than rates approved for reference librarians by other courts in this District. *See Sidley Holding Corp. v. Ruderman*, No. 08-CV-2513 (WHP) (MHD), 2009 WL 6047187, at *27 (S.D.N.Y. Dec. 30, 2009), *adopted by* 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010) (approving $125/hour for a librarian assisting in research, as in line with rates for paralegals); *Sprint Commc'ns*, 2014 WL 6611484, at *8 (approving $180/hour for a librarian, as in line with rates for paralegals).

Accordingly the Court finds that the hourly rates of $495 for Mr. Sacks, $459 for Mr. Kessler, $324 for Mr. Joelson, $247.50 for Ms. Garcia, $200 for Mr. Kogan, and $85.50 for Mr. Plotkin are reasonable.

## 2.    Reasonable Number of Hours

A party seeking an award of attorneys' fees "must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded*

22

*Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983); *see, e.g., U.S.A. Famous Original Ray's,* 2013 WL 5363777, at *7. In determining the reasonable number of hours required by a case, the critical issue is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez.* 973 F.2d 96, 99 (2d Cir. 1992). If the Court finds that some of the claimed hours are "excessive, redundant or otherwise unnecessary," it may reduce the number of reasonable hours accordingly. *Hensley v. Eckhart,* 461 U.S. 424, 434 (1983); *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 426 n. 6 (2d Cir. 1999).

Among other reasons for reduction or denial of fees, "[a]n attorney is not entitled to fees arising from claims against other unrelated defendants." *Laboratorios*, 2013 WL 5977440, at *15; *see also Lucerne Textiles v. H.C.T. Textiles Co.*, No. 11-CV-5456 (KMW) (AJP), 2013 WL 174226, at *9 (S.D.N.Y. Jan. 17, 2013) ("[The defaulting defendant] is not responsible for fees related to [Plaintiff's] claims against other parties and, therefore, these entries warrant a reduction."), *adopted by* 2013 WL 1234911 (S.D.N.Y. Mar. 26 2013); *Colon v. City of New York,* No. 09-CV-8 (JBW) (CLP), 2012 WL 691544, at *22 (E.D.N.Y. Feb. 9, 2012) (recommending denial of fees for tasks unrelated to plaintiff's case against defaulting defendants), *adopted by* 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012); *Williamsburg Fair Hous. Comm. v. RossRodney Hous. Corp.,* 599 F. Supp. 509, 514 (S.D.N.Y. 1984) ("Where there are multiple defendants, each defendant must bear the prevailing plaintiff's

fees for time spent on matters clearly related to the claims made against that defendant.").

Bumble has provided the Court with the contemporaneous billing records of its counsel at Akerman, which include the date, the hours expended, and brief descriptions of the work done in this action by attorneys and other Akerman employees. Sacks Decl., Ex. 15. Bumble has represented that it is only seeking an award of the fees incurred for services relating directly to the Vela Defendants. Sacks Decl. ¶ 47. Bumble has provided a summary breakdown of the $49,639.90 in compensation that it seeks, as follows: $6,979.50 for 14.1 hours of work by Mr. Sacks; $1,606.50 for 3.5 hours of work by Mr. Kessler, $22,064.40 for 68.1 hours of work by Mr. Joelson, $18,685.75 for 75.5 hours of work by Ms. Garcia, $261 for .9 hours of work by Mr. Kogan, and $42.75 for .5 hours of work by Mr. Plotkin. Sacks Decl., Ex. 16.

Bumble calculated these summary figures based on the contemporaneous billing records with time entries. In doing so, Bumble included 100% of the fees for services relating exclusively to the Vela Defendants. *Id.* ¶ 47. However, where a single time entry reflects several different services rendered, only some of which relate to the Vela Defendants, Bumble only counted "a percentage of those fees," which was "determined after analyzing each time entry and making a reasonable estimate." *Id.* ¶ 30. Upon review of the billing records submitted by counsel, the Court finds it necessary to assess separately the entries relating exclusively to the

24

Vela Defendants and those that encompass multiple services relating to several

defendants, including the Non-Defaulting Defendants.

With regard to the time entries for services relating exclusively to the Vela

Defendants, the Court finds that the hours expended are reasonable. The Court

notes that a large percentage of these hours arose from difficulties in finding and

serving the Vela Defendants, such as time spent preparing a motion for alternative

service, and that the tasks pursued were reasonable. *See, e.g., Guardian Life Ins.*

*Co. of Am. V. Does 1-10*, No. 05-CV-6606 (RCC) (AJP), 2006 WL 3008078, at *2

(S.D.N.Y. Oct. 23, 2006) *adopted by* 2007 WL 103022 (S.D.N.Y. Jan. 11, 2007).  The

Court calculates the fees for time entries relating specifically to the Vela

Defendants to be $38,697.65 and, based on a review of these billing records, finds

the hours expended and amount sought to be reasonable.[1]

In contrast, where the Akerman time entries group together several services,

including those relating to the Non-Defaulting Defendants, the Court is unable to

determine the time that was spent on the tasks relating solely to the Vela

Defendants in order to assess its reasonableness or fully credit that time.

*Laboratorios*, 2013 WL 5977440, at *16 (citing *Entral Grp. Int'l v. Sun Sports Bar

Inc.*, No. 05-CV-4836 (CBA), 2007 WL 2891419, at *11 (E.D.N.Y. Sept. 28, 2007))

(where billing records relate to multiple defendants, including those other than the

---

[1] The Court calculated this number by adding the billing entries related specifically to the Vela Defendants and excluding the "mixed" or "grouped" entries, discussed in the following paragraph.  The unapproved entries are listed in Exhibit A to this Report and Recommendation.

defaulting defendant, "'it is impossible for the Court to determine how much time was spent on a specific task and credit some portion' of the entry, and therefore, the Court recommends no fee award for this billing entry"); *see also Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992) (stating that "the commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities" and excluding such entries); *Bank v. Ho Seo*, No. 06-CV-5445 (LTS) (RLE), 2009 WL 5341672, at *5 (S.D.N.Y. Dec. 16, 2009) (combining "multiple tasks into one entry" impedes "efforts to evaluate the reasonableness of any of the listed activities" and reducing the award by a percentage), *adopted as modified on other grounds*, 2010 WL 129681 (S.D.N.Y. Jan. 13, 2010). Although counsel reports that "only a percentage of those fees are counted and sought through this application" and that this "percentage was determined after analyzing each time entry and making a reasonable estimate," counsel has provided no breakdown of this estimate. Sacks Decl. ¶ 30. This lack of evidence constrains the Court from recommending any fee award for these "mixed" entries.

The Court consequently recommends that Bumble be awarded attorneys' fees in the amount of $38,697.65.[2] This award compensates Bumble for time entries

---

[2] The unapproved, mixed billing entries, which were excluded from the attorneys' fees that the Court recommends be awarded, are listed in Exhibit A to this Report and Recommendation. It appears, from the Court's own calculations, that Bumble has only claimed approximately one-third of its attorneys' fees from the mixed fee entries. While this request is not necessarily unreasonable, the Court is unable to adequately assess it because Bumble has provided no explanation as to how or why it made this determination.

relating specifically to the Vela Defendants. It excludes counsel's other time entries without prejudice to renewal upon submission of sufficient documentation and/or recalculation consistent with this Report and Recommendation. Specifically, to the extent Bumble seeks compensation for time entries whose descriptions include mention of services relating to the Non-Defaulting Defendants, counsel must break out what percentage of each entry they are claiming and explain how they arrive at this figure.[3]

### C.   Costs

Bumble also seeks to recover costs expended in litigation against the Vela Defendants in the amount of $2,669.51. Generally, the Lanham Act allows prevailing parties to recover "[o]ut of pocket litigation costs" when "they are necessary for the representation of the client." *GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08-CV-6030 (GEL), 2009 WL 2150891 at *10 (S.D.N.Y. July 20, 2009) (citations omitted). This applies to parties that elect to recover statutory damages under 15 U.S.C. § 1117(c). *See, e.g., Lane Crawford LLC v. Kelex Trading (CA) Inc.*, No. 12-CV-9190 (GBD) (AJP), 2013 WL 6481354, at *11 (S.D.N.Y. Dec. 3, 2013), *adopted by* 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014).

Bumble seeks reimbursement for costs relating to library research charges, postage and shipping, and service of process. Sacks Decl. Ex. 15. The majority of

---

[3] Bumble has requested permission to file a supplemental application for an order awarding any additional attorneys' fees and costs incurred after June 30, 2015. Pl. Mem. at 15 n.2. The Court does not know what this application would entail, other than presumably the fees incurred in preparing this damages inquest submission, which were inexplicably excluded from the records Bumble submitted.

these costs relate to repeated service attempts. In recognition of the difficulties in

locating and serving the Vela Defendants, the Court finds that these costs are

reasonable. *See Guardian Life Ins. Co. of Am.*, 2006 WL 3008078 at \* 2 (finding

costs to be reasonable "[b]ased on the difficulties in finding and serving

defendants"). The costs that Bumble claims for research, postage, and shipping are

also reasonable as they relate to the Vela Defendants. However, upon review of the

billing records, the Court finds that there was no evidence of activity specifically

related to the Vela Defendants that would justify two of the claimed charges for

library research ($39.68 on August 31, 2014 and $46.00 on September 30, 2014) and

one charge for postage ($4.20 on January 30, 2015). The Court bases this finding on

its review of the Akerman billing records, which demonstrate no research or mailing

activities related to the Vela Defendants that occurred on or around those dates by

the Akerman employees responsible for this case. The Court consequently

recommends reducing Bumble's claimed costs by $89.88 for an award of costs in the

amount of $2,579.63.

## D.   Interest

### 1.   Prejudgment Interest

While Section 1117(c) of the Lanham Act does not explicitly provide for

prejudgment interest in cases awarding statutory damages, the Second Circuit has

held that "such an award is within the discretion of the trial court and is normally

reserved for 'exceptional' cases." *Am. Honda Motor Co. v. Two Wheel Corp.*, 918

F.2d 1060, 1064 (2d Cir. 1990) (affirming denial of request for prejudgment

28

interest).  Courts in this circuit have elected to award prejudgment interest in cases warranting statutory damages under 15 U.S.C. § 1117(c).  *See, e.g., Dong,* 2013 WL 4046380, at \*7; *Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.,* No. 08-CV-0068 (KAM) (JO), 2010 WL 2133937, at \*14-15 (E.D.N.Y. Mar. 11, 2010); *Johnson & Johnson Consumer Cos. v. Aini,* 540 F. Supp. 2d 374, 396-97 (E.D.N.Y. 2008).  Such awards came as a result of defendants' willful conduct or bad faith and "exceptional" circumstances.  *See, e.g., Philip Morris,* 2010 WL 2133937, at \*14 (finding prejudgment interest appropriate where defendants "not only acted willfully, but [defendant's] attempts to frustrate the judicial process make the case exceptional"); *Johnson & Johnson,* 540 F. Supp. 2d at 396-97 (awarding prejudgment interest without explanation where defendant acted with willful blindness); *cf. Schatzki v. Weiser Capital Mgmt., LLC,* No. 10-CV-4685 (RWS), 2014 WL 630650, at \*2 (S.D.N.Y. Feb. 18, 2014) (recognizing availability of prejudgment interest for statutory damages but declining to award it where plaintiff did not establish that defendant acted willfully or in bad faith, finding that "[a]s such, there are no 'exceptional' circumstances that justify an award of prejudgment interest on the trademark claim"), *aff'd sub nom., BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC,* 623 F. App'x 7 (2d Cir. 2015).  Where a court awards prejudgment interest, "it is within the trial court's discretion to choose what rate to apply."  *GTFM, Inc. v. Solid Clothing,* No. 01-CV-2629 (DLC), 2002 WL 31886349, at \*4 (S.D.N.Y. Dec. 26, 2002).

Prejudgment interest has been found "appropriate to give effect to the compensatory scheme" of the Lanham Act, the purpose of which "is to: (i) ensure

that an infringer not profit in any way from its misconduct; and (ii) provide a specific and general deterrent to those who might exploit another's trademark rights without authorization" where a defendant established its willful violation of trademark law by virtue of defaulting in an action. *National Association*, 2006 WL 5804603, at \*7. However, this requires a case-by-case determination in which courts consider whether an award of prejudgment interest serves these purposes, even where willful infringement or the exceptional nature of the case has already been determined. *Phillip Morris USA Inc.*, 2010 WL 2133937, at \*14 (noting that some courts have deemed a case exceptional and worthy of prejudgment interest where defendant committed willful infringement while others "declined to find a case sufficiently 'exceptional' to justify prejudgment interest solely" on this basis).

Here, the intent of the statutory damages award is manifold: to compensate Bumble for damages sustained from infringement; to penalize the Vela Defendants for willful misconduct; and to deter wrongful conduct by the defendants and others. As a result, the Court finds that an award of prejudgment interest on the statutory damages is appropriate to serve these purposes. This interest should be applied at the 9% statutory rate under New York Civil Practice Law and Rules § 5004, compounded annually. *See, e.g., National Association*, 2006 WL 5804603, at \*7 (applying this rate in trademark infringement case); *GTFM, Inc.*, 2002 WL 31886349, at \*4 (same). Although the full scope of the Vela Defendants' infringements is unknown, Bumble has produced evidence that the Vela Defendants made sales of infringing Bumble products in the amount of $37,474.28 in June of

30

2009, followed by sales in the amount of $108,072.04 in November and December of 2011.  In an effort to make the interest proportional to the amount and timing of the infringing sales, interest should begin accruing on $200,000, a smaller amount of the recommended $500,000 statutory damages award, from June 1, 2009, and on the remaining $300,000 from December 1, 2011.[4]

### 2.    Postjudgment Interest

Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . [and] shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  Bumble is consequently entitled to and should be awarded postjudgment interest on the money judgment entered in this action. *Gucci America Inc. v. Tyrell-Miller*, 678 F. Supp. 2d 117, 124 (S.D.N.Y. 2008) (awarding postjudgment interest pursuant to 28 U.S.C. § 1961(a) in Lanham Act action); *National Association*, 2006 WL 5804603, at *7 (awarding postjudgment interest in Lanham Act case "based upon the express language" of 28 U.S.C. § 1961(a)).

---

[4] Bumble itself proposed this method of calculation (albeit as to higher amounts). *See* Pl. Mem. at 20.

31

### III.   CONCLUSION

For all of the foregoing reasons, I recommend that the Court award Bumble statutory damages of $500,000 and fees and costs in the amount of $41,277.28 ($38,697.65 + $2,579.63), and that the Court award prejudgment and postjudgment interest as described above.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Valerie E. Caproni and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Caproni. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:      New York, New York
            February 17, 2016

JAMES L. COTT
United States Magistrate Judge

32

**Bumble and Bumble LLC v. Pro's Choice Beauty Care, Inc.,** *et al.*

**14-CV-6911 (VEC) (JLC)**

**Report and Recommendation**

**Exhibit A**

| Type | Date | Attorney Initials | Hours | Fees |
|------|------|-------------------|-------|------|
| Mixed | 6/8/2014 | ISS | 1.4 | 693 |
| Mixed | 8/12/2014 | BJ | 5.3 | 1717.2 |
| Mixed | 9/15/2014 | BJ | 1.5 | 486 |
| Mixed | 9/23/2014 | BJ | 0.9 | 291.6 |
| Mixed | 9/29/2014 | BJ | 1.5 | 486 |
| Mixed | 9/30/2014 | BJ | 2.5 | 810 |
| Mixed | 10/1/2014 | BJ | 0.6 | 194.4 |
| Mixed | 11/7/2014 | BJ | 0.7 | 226.8 |
| Mixed | 11/20/2014 | BJ | 0.5 | 162 |
| Mixed | 11/25/2014 | BJ | 0.6 | 194.4 |
| Mixed | 12/1/2014 | BJ | 0.1 | 32.4 |
| Mixed | 12/11/2014 | BJ | 0.8 | 259.2 |
| Mixed | 12/12/2014 | BJ | 0.4 | 129.6 |
| Mixed | 1/7/2015 | BJ | 1.6 | 518.4 |
| Mixed | 1/7/2015 | SMK | 0.9 | 413.1 |
| Mixed | 1/14/2015 | BJ | 1.9 | 615.6 |
| Mixed | 1/15/2015 | BJ | 1.3 | 412.2 |
| Mixed | 4/7/2015 | BJ | 3.1 | 1004.4 |
| Mixed | 4/7/2015 | ISS | 3 | 1485 |
| Mixed | 4/8/2015 | BJ | 2.5 | 810 |
| Mixed | 4/8/2015 | ISS | 1.5 | 742.5 |
| Mixed | 4/13/2015 | ISS | 2.2 | 1089 |
| Mixed | 4/14/2015 | BJ | 0.6 | 194.4 |
| Mixed | 4/14/2015 | ISS | 2 | 990 |
| Mixed | 4/15/2015 | BJ | 0.2 | 64.8 |
| Mixed | 4/29/2015 | ISS | 3.1 | 1534.5 |
| Mixed | 4/29/2015 | BJ | 4.7 | 1522.8 |
| Mixed | 5/5/2015 | ISS | 0.8 | 396 |
| Mixed | 5/5/2015 | BJ | 3.6 | 1166.4 |
| Mixed | 5/8/2015 | BJ | 0.9 | 291.6 |
| Mixed | 6/5/2015 | BJ | 5 | 1629 |
| Mixed | 6/8/2015 | BJ | 4.5 | 1458 |
| Mixed | 6/8/2015 | ISS | 0.2 | 99 |
| Mixed | 6/9/2015 | BJ | 4.7 | 1522.8 |
| Mixed | 6/9/2015 | ISS | 0.8 | 396 |
| Mixed | 6/10/2015 | BJ | 5.4 | 1749.6 |

1

| Mixed | 6/11/2015 | ISS | 0.6 | 297 |
| Mixed | 6/18/2015 | BJ | 6.3 | 2041.2 |
| Mixed | 6/24/2015 | ISS | 1 | 495 |
| Mixed | 6/24/2015 | SMK | 1.5 | 688.5 |
| Mixed | 6/25/2015 | BJ | 2.6 | 842.4 |
| Mixed | 6/25/2015 | SMK | 1.4 | 642.6 |